No. 12805

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

JOHN McMILLEN,

Claimant and Respondent,

-vs-

ARTHUR G. McKEE and COMPANY,

Defendant and Appellant.

---

Appeal from:   District Court of the Second Judicial District,
               Honorable John B. McClernan, Judge presiding.

Counsel of Record:

   For Appellant:

       Poore, McKenzie, Roth and Robinson, Butte, Montana
       James A. Robischon argued, and Donald C. Robinson
       argued, Butte, Montana

   For Respondent:

       Hon. Robert L. Woodahl, Attorney General, Helena,
       Montana
       Lon J. Maxwell, Assistant Attorney General, argued,
       Helena, Montana
       Norman H. Grosfield, Special Assistant Attorney General,
       argued, Helena, Montana
       Corette, Smith and Dean, Butte, Montana
       Kendrick Smith argued, Butte, Montana

---

Submitted:   March 4, 1975

Decided: APR - 7 1975

Filed: APR - 7 1975

Thomas J. Kearney
                              Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Our original opinion herein appearing in 31 St.Rep. 1026, was subsequently withdrawn. A rehearing was granted limited to this question:

> "Does section 92-616, R.C.M. 1947, deny equal protection of the laws to the employer and defendant in violation of Sec. 1 of the 14th Amendment to the United States Constitution or Sec. 17 (sic), Article II of the Montana Constitution?"

This constitutes the complete opinion of this Court on all issues of this case following rehearing:

This is a consolidated appeal by the employer and its insurer from two judgments of the district court of Silver Bow County, awarding workmen's compensation benefits to two injured employees in companion cases.

Claimants are John and Robert McMillen, employees of Arthur G. McKee & Company, a contractor engaged on a job of smelter improvement in Anaconda, Montana, under a written contract. Defendant is General Accident Fire & Life Assurance Corporation, a private insurance company, the Plan II insurer of the McKee Company under the Montana Workmen's Compensation Act.

The ultimate issue for review is whether the employees were injured in the course and scope of their employment so as to entitle them to workmen's compensation benefits under the Montana Act. The Workmen's Compensation Division and the district court held they were. We affirm.

The two McMillen brothers lived in Butte and traveled each workday to and from the Anaconda job site where they had been employed for about two years. Each was paid $4 per day travel allowance under the terms of a union contract providing in material part:

> "* * * Travel pay or subsistence shall be for days worked. * * * The mileage and amount of travel pay or subsistence shall be as follows:

> "Zero to 12-1/2 miles ------------------none

> "Over 12-1/2 to 25 miles --------------$2.50

> "Over 25 to 50 miles -----------------$4.00

> "Over 50 miles ------------------------$8.00."

John McMillen purchased a used Dodge truck three days before the accident in question. It had some 71,000 miles on it at the time of purchase, but John testified he carefully checked the car before purchase and found it safe.

On Monday morning, July 2, 1973, the two McMillan brothers were seriously injured in a single car accident while enroute to work. Due to some mechanical failure of the Dodge truck, the rear wheels locked, the truck overturned, and both McMillens were injured. The accident occurred on the highway between Butte and Anaconda before they reached the job site. The cause of the accident was something over which neither the employees nor the employer had any control.

Prior to the day of the accident, both employees had been paid $4 per day for each day worked in addition to their wages. The amount paid was called "the mileage and amount of travel pay or subsistence". On the itemized breakdown attached to their checks, there is a column headed "Subs.Travel" in which this payment was entered. The employer did not deduct any taxes on this travel pay, but each employee paid income taxes on the travel money.

Neither employee received any travel pay on the day of the accident.

The claims of each employee were heard by the Workmen's Compensation Division. The Division entered findings of fact, conclusions of law, and an order awarding compensation. The substance of the Division holding was that the travel allowance was paid as an incentive "to get the men to come on the job" and a benefit to the employer; that accordingly each suffered an accidental injury arising out of and in the course of his employment; and, that each was entitled to benefits under the Montana Act including compensation, medical expense and attorney fees.

On appeal to the district court, the cases were heard on the the record before the Workmen's Compensation Division without

additional evidence. The district court adopted the findings of fact and conclusions of law of the Division and entered judgment affirming the Division award of benefits.

The employer and insurer now appeal from the judgment of the district court.

The issue is whether under the facts and circumstances of this case the two employees suffered accidental injuries "arising out of and in the course of" their employment within the meaning of Montana's Workmen's Compensation Act. Section 92-614, R.C.M. 1947.

A review of some prior decisions of this Court on compensation coverage where an employee is injured "going or coming" to and from the job furnishes the background for our determination.

In Griffin v. Industrial Accident Fund, 111 Mont. 110, 106 P. 2d 346, compensation was denied a foreman injured in a fall on a city sidewalk when returning home from work. The basis of denial was that the sidewalk was not used by the employer in carrying on his business in which the employee was employed and consequently the employee was injured only by an ordinary street hazard common to all pedestrians.

In Morgan v. Industrial Accident Board, 133 Mont. 254, 260, 321 P.2d 232, claimant, a union shop steward, was injured in an automobile accident while traveling from Miles City to Forsyth. In denying compensation, this Court pointed out that at the time of injury claimant was on union business and not within the scope of his employment. The Court laid down this principle:

> "Under the particular circumstances, where the accident occurred is irrelevant. If claimant was injured within the scope of his employment, the fact that he was injured 'after hours' and 'off premises' is incidental. Even in 'street risks', the scope, not the place of employment controls."

- 4 -

Guarascio v. Industrial Accident Board, 140 Mont. 497, 501, 374 P.2d 84, granted compensation where an itinerant terrazzo tile worker residing in Salt Lake City was killed in an automobile accident enroute from Utah to Butte, Montana to aid in construction of a hospital there. At the time of the accident Guarascio was being paid a travel pay allowance based upon his hourly rate of pay multiplied by the number of hours necessary to travel from Salt Lake City to Butte, plus an allowance for subsistence and transportation costs.

In Guarascio after finding "an informal, oral type of employment", this Court laid down the test of compensability in "going and coming' cases in terms of whether some reasonably immediate service to the employer was involved:

> "In the instant case, the decedent Guarascio was carrying on the business of his employer by transporting himself to Butte, Montana, so that he could be on the job as soon as possible. Furthermore, the employer recognized the benefit to it by virtue of the fact the decedent workman was to receive monetary compensation for the time spent traveling to the job.
>
> "In Morgan v. Ind. Acc.Bd., 133 Mont. 254, 321 P.2d 232, this Court made the following observation:
>
> "'What is the underlying principle? In cases where some reasonably immediate service to the employer can be discerned the claim has been sustained. Where there has been no reasonably immediate service the claim has been denied. Such impresses us as a fundamental rule and guide for the liberality to which this Court is necessarily and properly committed and for which claimant's counsel so earnestly contend. [Citing authority]. Beyond this each decision must be controlled by the particular facts and circumstances of the particular case. [Citing authority]. Our opinion proceeds upon that premise.'
>
> "The record here substantiates the findings of the district court, but we wish to again state, as we did in the Morgan case, that we 'do not intend to establish any precedent * * *. Our decision is limited to the facts in the case now before us.'"

The employer and insurer contend that Guarascio is distinguishable on the basis that there the employee was paid hourly wages for his travel time in addition to subsistence and travel costs indicating that the travel involved was for the benefit of his employer. They contend that the method of payment is crucial

to determination of benefit to the employer, which controls compensability.

We disagree. Although benefit to the employer is an important factor in determining compensability, the payment of hourly wages for travel time is not necessarily a universal condition precedent. In the instant case, the union contract singled out for special consideration a travel allowance and testimony at the hearing indicated it was paid as an incentive to get men out on the job. This contractual fact supports the finding of the Division and the district court that the travel allowance was for the benefit of the employer within previous holdings of this Court.

This is consistent with the majority rule in the United States that a workman is usually entitled to compensation when injured during travel to or from his employment where he receives a specific allowance to get to and from his job. 1 Larsen, Workmen's Compensation Law, § 16.20 et seq. 1 Larsen, Workmen's Compensation Law, § 16.30, p. 4-112, summarizes the principle and its rationale:

> "However, in the majority of cases involving a deliberate and substantial payment for the expense of travel, or the provision of an automobile under the employee's control, the journey is held to be in the course of employment. This result is usually correct, because when the subject of transportation is singled out for special consideration it is normally because the transportation involves a considerable distance and therefore qualifies under the rule herein suggested: that employment should be deemed to include travel when the travel itself is a substantial part of the service performed. The sheer size of the journey is frequently the principal fact supporting this conclusion, as in the successful cases involving trips of eight miles, 20 miles, 22 miles, 30 miles, 50 miles, 54 miles, 60 miles, 120 miles, and 130 miles."

The employer and insurer also argue that the union contract providing for a travel allowance is irrelevant to compensability because the meaning of the phrase "arising out of and in the course of employment" must be determined by the rules of statutory construction. They further contend that employers and employees

- 6 -

can not contract themselves in and out of coverage under the Workmen's Compensation Act by the terms of a union contract.

This contention is specious. The statutory language can not be interpreted in a vacuum. It must be interpreted in the context of the facts of the particular case before the court. The union contract providing for travel allowance is a fact. Payment of the travel allowance is another fact. The purpose of payment to provide an incentive to get the employees on the job is a third fact. The benefit to the employer is a final fact. The statutory language is simply applied to these facts and the meaning determined.

We have considered all the cases, statutes and authorities cited by counsel. We hold that the employees here were injured in an accident "arising out of and in the course of employment" and their injuries are therefore compensable. Our decision is limited to the facts of the case before us.

The employer and insurer also raise the issue of the constitutionality of section 92-616, R.C.M. 1947, which provides, in pertinent part:

> "In the event the insurer denies the claim for compensation or terminates compensation benefits, and the claim is later adjudged compensable, by the division or on appeal, the insurer shall pay reasonable costs and attorneys' fees as established by the division * * *."

The employer and insurer contend this statute denies equal protection of the laws in violation of the United States and Montana constitutions. Two specific violations are alleged:

1) Allowing costs and attorneys' fees to successful claimants, but not to successful insurers.

2) Requiring payment of costs and attorneys' fees if the successful claimant is covered under Plans 2 or 3 (private insurance company and the state fund), but not if he is covered under Plan 1 (self-insurers).

There is ample authority supporting the constitutionality of Montana's Workmen's Compensation Act as a valid exercise of the

state's police power. Cunningham v. Northwestern Improvement Co., 44 Mont. 180, 119 P. 554. Here our concern is whether or not, in exercising that police power, the legislature has violated constitutional guarantees of equal protection of the laws.

The argument that insurers should be able to recover attorneys' fees when they prevail, in order to satisfy equal protection provisions, is not supported by any discoverable authority. To the contrary, the United States Supreme Court in Missouri, Kansas & Texas Railway of Texas v. Cade, 233 U.S. 642, 34 S.Ct. 678, 58 L.Ed. 1135, 1138;1139, held:

> "If the classification is otherwise reasonable, the mere fact that attorney's fees are allowed to successful plaintiffs only, and not to successful defendants, does not render the statute repugnant to the 'equal protection' clause.* * *
>
> " * * *
>
> "* * *The outlay for an attorney's fee is a necessary consequence of the litigation, and since it must fall upon one party or the other, it is reasonable to impose it upon the party whose refusal to pay a just claim renders the litigation necessary."

That holding has remained unchanged for over sixty years and controls the federal constitutional question here. For the same reasons, we hold that there is no violation of the equal protection clause in Article II, Section 4, Montana Constitution.

The second argument raised under federal and state equal protection clauses arises from an improper construction of section 92-616, R.C.M. 1947. The employer and insurer argue that section 92-435, R.C.M. 1947, defining an "insurer", controls the applicability of section 92-616. They argue that these sections, when read together, unlawfully discriminate against Plan 2 and Plan 3 employers and insurers by requiring them to pay costs and attorneys' fees while exempting Plan 1 employers.

This argument ignores the provisions of section 92-401, R.C.M. 1947, which provide that statutory definitions will control unless the context otherwise requires. The context here requires that section 92-616 covers employers and insurers under all three plans. This conclusion is compelled by a number of considerations.

First, if a statute is capable of two constructions, it is the duty of this Court to give the statute that construction which will make it constitutional. School District No. 12 v. Pondera County, 89 Mont. 342, 297 P. 498; Parker v. County of Yellowstone, 140 Mont. 538, 374 P.2d 328.

Second, in the context of the legislative act (Ch. 477, Laws of 1973), it is clear the legislature intended that the challenged provisions apply to all three compensation plans. That legislative enactment began with the words "Every insurer under any plan for the payment of workmen's compensation benefits * * *." (Emphasis supplied). The use of the word "insurer" throughout the remainder of the act (including what is codified as section 92-616) should be construed as referring to insurers "under any plan" --- Plans 1, 2 or 3, as the context does not otherwise require. Employers are their own "insurers" under Plan 1.

Finally, section 92-838, R.C.M. 1947, requires that the provisions of the Workmen's Compensation Act be liberally construed. The construction employed in this opinion is in accord with the spirit of that Act, providing the employee with compensation undiminished by the expenses of seeking legal remedies when he is wrongfully denied compensation benefits.

The judgment of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices.

- 9 -

Mr. Justice Wesley Castles dissenting in part and concurring in part:

I dissent as to what the majority calls the ultimate issue. The accident did not arise out of and in the course of employment. Whether it be travel allowance or subsistence or any other negotiated fringe benefit, does not make it in the course of employment as far as industrial accidents are concerned.

I concur on the issue of constitutionality of section 92-616, R.C.M. 1947.

_____
Justice.