No. 92-114

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

DAVID DALE,

Claimant and Respondent,

-v-

TRADE STREET, INC. and STATE
COMPENSATION MUTUAL INSURANCE FUND,

Employer, Defendant and Appellant.

APPEAL FROM:     Workers' Compensation Court
                 For the State of Montana
                 The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Laurence   Hubbard,   State   Compensation   Mutual
            Insurance Fund, Helena, Montana

        For Respondent:

            Thomas C. Bulman, Attorney at Law, Missoula, Montana

        For Amicus Curiae:     _____

            Oliver H. Goe, Attorney at Law, Helena, Montana
            (for Montana Motor Carriers Association, Inc.)

                            Submitted on Briefs:  February 18, 1993

                                      Decided:  April 1, 1993

Filed APR 1 - 1993

____ Smith
____ OF SUPREME COURT
   STATE OF MONTANA

_____
                Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from the Worker's Compensation Court of a judgment concluding that the claimant, David Dale, was injured during the course and scope of his employment. We reverse.

There are three issues on appeal:

1. Did the Worker's Compensation Court err in determining that David Dale was injured in the course and scope of his employment?

2. Did the Worker's Compensation Court correctly apply § 39-71-407(3), MCA?

3. Did the Worker's Compensation Court err in failing to assess costs against the appellant?

David Dale (Dale) was a long haul trucker for Trade Street Inc. As part of his employment, he left Missoula, Montana on March 20, 1991 and picked up a load of lumber at Townsend, Montana to be delivered by March 25, 1991 in Mount Clemens, Michigan. He then drove to Billings, Montana where he stayed at his sister's home for two nights and a day.

On March 22, 1991, Dale drove to the Flying J Truck Stop near Miles City, where his brother had previously arranged to meet him. Dale left the truck at the truck stop and rode into Miles City in his brother's truck. It is difficult to tell what happened thereafter because neither Dale nor his brother, Lester "Buddy" Dale Jr. (Buddy), remember what occurred between 3:30 p.m. that afternoon and 9:30 p.m. that evening when they were involved in a single car accident. The accident occurred approximately one mile

2

from the Flying J Truck Stop on the only road from Miles City to the Flying J Truck Stop.

Buddy, the driver of the vehicle, was cited at the accident for driving under the influence and the claimants's blood alcohol content (BAC) was measured at 0.14. Other facts will be presented as necessary in the following portion of the opinion.

"Our standard for reviewing a decision of the Workers' Compensation Court is to determine if there is substantial evidence to support the findings and conclusions of that court. Where there is substantial evidence to support the Workers' Compensation Court, this Court cannot overturn the decision." Garcia v. State Comp. Mut. Ins. Fund (1992), 253 Mont. 196, 198, 832 P.2d 770, 771-772. When the question is one of law or how particular findings of fact apply to the law, our scope is not so limited and we remain free to reach our own conclusions. Wassberg v. Anaconda Copper Co. (1985), 215 Mont. 309, 697 P.2d 909.

Appellant, State Compensation Mutual Insurance Fund (State Fund) argues that Dale had deviated from his employment at the time of the accident under consideration. Dale contends that the Workers' Compensation Court had substantial evidence from which to conclude that Dale was injured within the course and scope of his employment.

In 1987, the legislature amended § 39-71-407, MCA, to codify exceptions to the general workers' compensation rule that actions occurring when employees are going to or coming from work are not within the course and scope of their employment. This statute

3

provides in pertinent part:

**Liability of insurers - limitations.** (1) Every insurer is liable for the payment of compensation, in the manner and to the extent hereinafter provided, to an employee of an employer it insures who receives an injury arising out of and in the course of his employment or, in the case of his death from such injury, to his beneficiaries, if any.

. . .

(3) An employee who suffers an injury or dies while traveling is not covered by this chapter unless:

(a) (i) the employer furnishes the transportation or the employee receives reimbursement from the employer for costs of travel, gas, oil, or lodging as a part of the employee's benefits or employment agreement; and

(ii) the travel is necessitated by and on behalf of the employer as an integral part or condition of the employment; or

(b) the travel is required by the employer as part of the employee's job duties. . . .

Section 39-71-407, MCA.

We will discuss the 1987 statutory additions in our discussion of Issue II below. However, our determination of the controlling issue in this case is discussed in Issue I below and is based on existing case law interpretations of the course and scope of employment.

I.

Did the Workers' Compensation Court err in determining that claimant was injured during the course and scope of his employment?

Axiomatic to a determination of workers' compensation coverage is that the injured worker be injured in the course and scope of his employment. Section 39-71-407(1), MCA. It is well-established in Montana that traveling employees are not covered 24 hours a day, without limitation, regardless of the conduct or activity in which they are involved. See, e.g., Correa v. Rexroat Tile (1985), 217

4

Mont. 126, 703 P.2d 160. The employee must remain in the course and scope of employment while traveling in order for the injury to be compensable. Correa, 703 P.2d at 163.

Here, the Workers' Compensation Court concluded that "the dispositive issue was that the employee was compensated for the time, was on his employer's business in being there and had not deviated from the employer's business." The Workers' Compensation Court also concluded that Dale was considered to be within the course and scope of his employment because he was hauling a load of lumber en route from Townsend, Montana to Mount Clemens, Michigan. Although the load was not due until March 25, 1991, Dale had picked the load up in Townsend on March 20, 1991.

State Fund contends that prior case law does not support the Workers' Compensation Court's conclusion. It cites Ogren v. Bitterroot Motors, Inc. (1986), 222 Mont. 515, 723 P.2d 944, as support for its contention that Dale was not within the course and scope of his employment when he was injured. Ogren declares the factors to be considered in determining whether a deviation from the scope of employment is substantial enough to take an employee out of the employment context: (1) the amount of time taken up by the deviation; (2) whether the deviation increases the risk of injury; (3) the extent of the deviation in terms of geography; and (4) the degree to which the deviation caused the injury. Ogren, 723 P.2d at 948.

In Ogren, Erik Ogren of Bitterroot Motors flew a co-worker from Missoula to Great Falls in the company plane. From there, he

5

proceeded to Sheridan, Wyoming to pick up his daughter from a beauty pageant and bring her home to Missoula. Ogren had trouble with the plane while in Wyoming and rented a car to complete the journey. He and his daughter were killed in an automobile accident caused when Ogren fell asleep and lost control of the vehicle while driving to Missoula. Ogren, 723 P.2d at 945-46.

The Workers' Compensation Court concluded that Ogren was not within the course and scope of his employment. On appeal, this Court determined that the trip from Great Falls to Sheridan was personal, was not a minor deviation and did not fall within the exception to the "going and coming" rule. Ogren, 723 P.2d at 947. In applying the deviation factors to determine that the deviation was substantial, we concluded that the deviation occurred over a period of 11 hours which was much longer than a round trip from Missoula to Great Falls, the business-related portion of his trip. Also, the deviation spanned 744 miles as compared to 336 miles for the business aspect of the trip. "This is clearly a case where the personal deviation completely dwarfed the business purpose." Ogren, 723 P.2d at 949. As for the two remaining factors, the trip to Sheridan and then on toward Missoula not only increased the risk of injury, it was the main reason the deaths occurred. We also cited with favor a quote from Calloway v. State Workmen's Comp. (1980), 165 W.Va. 432, 268 S.E.2d 132, as follows:

> In the case of a major deviation from the business purpose most courts will bar compensation recovery on the theory that the deviation is so substantial that the employee must be deemed to have abandoned any business purpose and consequently cannot recover for injuries received, even though he has ceased the deviation and is

6

returning to the business route or purpose.

Ogren, 723 P.2d at 948.

The Workers' Compensation Court considered the facts of the present case to be similar to Gordon v. H.C. Smith Const. Co. (1980), 188 Mont. 166, 612 P.2d 668. We do not agree. Gordon, an electrician who lived in Butte but was working near Lewistown, maintained a temporary residence at the Brand T Motel in Lewistown. On May 1, 1978, Gordon worked a full day at the work site which was about 24 miles northeast of Denton, Montana. Shortly after work, Gordon met some of his coworkers at the Denton bar for beer and pool. They left the bar at approximately 10:00 p.m. and drove toward Stanford, where Gordon customarily stayed, rather than returning to Lewistown. Gordon was a passenger in a truck driven by a co-worker who had his quarters in Stanford. A few minutes after leaving the Denton Bar, the truck went off the road and Gordon was killed.

Gordon's employment contract provided for $22 daily in subsistence pay when working more than 54 miles from the home office. In concluding that his compensation for travel qualified the claimant for workers' compensation coverage, we reasoned as follows:

> Because the union contract singles out for special consideration a travel allowance and it is paid as an incentive to get men onto jobs and results in a reasonable benefit to an employer, then while the employee is "traveling" enroute to or from work, any injury is within the exception and arises out of and in the course and scope of employment.

Gordon, 612 P.2d at 671.

7

In this case, although Dale received a subsistence allowance and was paid for each mile he traveled, he was not paid for traveling to or from work. He was paid for the actual miles traveled during work. Unlike Gordon, it was not an incentive to get him to his place of employment. Also unlike Gordon, Dale's subsistence pay was not an incentive to get him to work in a remote location. We conclude that the Workers' Compensation Court was incorrect in holding that Gordon was controlling here.

As for the alcohol consumption, we previously stated that the alcohol factor alone does not establish a deviation from the course and scope of employment. Gordon, 612 P.2d at 672. See also Steffes v. 93 Leasing Co. (1978), 177 Mont. 83, 580 P.2d 450; and Parker v. Glacier Park, Inc. (1991), 249 Mont. 225, 815 P.2d 583. In Parker, we found no deviation from the course and scope of employment, stating:

> We refuse to overrule thirteen years of precedent to hold that an employee who may be under the influence of alcohol, without having abandoned the course of his employment, is precluded from recovering under the workers' compensation system.

Parker, 815 P.2d at 586. The claimant in Parker had not abandoned the course and scope of his employment. Although he consumed several beers, he had done so while also working on employment-related tasks after driving to another work location. He wrecked his car while driving back to the first work location to speak with another employee about business-related matters. There was no evidence that the claimant was acting outside the scope of his employment at that time. Parker, 815 P.2d at 586.

8

In this case, however, there is no evidence that Dale was attending to employment-related matters. In Courser v. Darby School Dist. #1 (1984), 214 Mont. 13, 16-17, 692 P.2d 417, 419, we discussed a four-part test to determine if an injury was work related: (1) whether the activity was undertaken at the employer's request, (2) whether the employer directly or indirectly compelled the employee's attendance at the activity, (3) whether the employer controlled or participated in the activity, and (4) whether both employer and employee mutually benefitted from the employee's attendance at the activity. Dale's actions do not fit within any of these factors. For an injury received while traveling, there must be some identifiable benefit to the employer. Steffes, 580 P.2d at 453. We conclude that Dale was injured during a six-hour period when he had temporarily abandoned the course of his employment and during which he attended to no employment-related matters. During the deviation from his scheduled route, the continuity of Dale's employment here was severed and remained so as he had not returned to the point of deviation from the path of duty.

Although the employer permitted its drivers to visit relatives along the route, there is no evidence that visits such as Dale's Miles City trip were contemplated. The employer's policy manual states that the equipment is to be routed according to a computer map and no deviations are allowed for off-route usage and that equipment is not to be used for any reason as a personal conveyance without prior authorization. Dale's supervisor testified that time

spent "goofing off" is considered "off-duty" or personal time of the driver. Dale also testified that he considered himself to be "off-duty" while he visited his sister. Dale testified that, as far as he could remember, the sole purpose for the Miles City stop was to visit his brother. During this "off-duty" time, he consumed alcohol with his brother.

Dales visit to his brother was a substantial deviation from Dale's employment. We reach the conclusion that there was a substantial deviation in Miles City by applying the Ogren factors to the facts of this case. The first Ogren factor is the amount of time taken up by the deviation. Although the time spent here was several hours less than in Ogren, when considered with the second factor, whether the deviation increases the risk of injury, it becomes substantial. Six hours of drinking with a companion and then having that companion drive back six miles to the location of the claimant's truck greatly increased the risk of injury. Similarly, the third factor, the extent of the deviation in terms of geography, becomes accentuated here, although it was a relatively small deviation when compared with that in Ogren. When considered in terms of the activity claimant engaged in, however, it, too, becomes substantial. The fourth factor, the degree to which the deviation caused the injury, is also significant here. The deviation was the cause of the injury. The Workers' Compensation Court deemed the geographical distance to be of paramount importance here as in Ogren. However, other factors in this case outweigh the significance of geographical distance.

10

Applying the <u>Ogren</u> factors to this case, we conclude that Dale's injury occurred while he was engaged in a substantial deviation from his employment. We conclude, therefore, that the Workers' Compensation Court erroneously held that Dale's acts were within the course and scope of his employment.

We hold that Dale was not injured within the course and scope of his employment.

## II.

Did the Workers' Compensation Court correctly apply § 39-71-407(3), MCA?

Sections 39-71-407(2)-(4), MCA, were added by the legislature in 1987. Section 39-71-407(1), MCA, remained intact. Section 1-2-101, MCA, requires the courts to construe the several provisions of a statute to give effect to all, if possible.

There is no evidence that the legislature intended to provide that employees would be covered under § 39-71-407(3) even though they did not meet the § 407(1) requirement that the injury arise in the course of employment. Nor is there evidence that the legislature intended that traveling employees be covered 24 hours a day, no matter what they are doing, how they are doing it, or how far removed the activity engaged in by the employee is from the employer's business purpose.

In applying § 39-71-407(3), MCA, to the present action, the Workers' Compensation Court judge concluded that:

> It is undisputed in this case that the claimant was driving his employer's truck when he went to Miles City, thus he fits within section 39-71-407(a)(i). Additionally, the payment of "subsistence" money clearly

11

encompasses meals and lodging expenses. A worker cannot reasonably be expected to eat and sleep in his truck. Whether claimant was in Miles City to eat or not is unknown but what is known is that he was in Miles City, enroute to Michigan and clearly was there as a part of his job. It is also undisputed that driving was, not only a necessary, integral part of the job, but was the job itself, thus claimant satisfies (a)(ii) and (b). Since it is also undisputed that he was not injured as a result of _his_ use of alcohol subsection (4) does not apply. (Emphasis in original.)

Section 407(3)(a)(i), MCA, states that workers are covered by employers if the employer furnishes the transportation or the employee receives reimbursement from the employer for travel costs as part of the benefits of an employee agreement. Dale was paid twenty one cents per mile driven, with six cents as "subsistence" pay. Transportation was provided for Dale by the employer and he received subsistence pay for meals, lodging and other travel costs as part of his employment. There is substantial evidence that Dale falls within § 39-71-407(3)(a)(i), MCA.

Dale contends that he also qualifies under § 407(3)(a)(ii) because travel is not only necessitated by and on behalf of the employer, and is not just integral to the employment, but it _is_ the employment itself. He makes a similar argument under § 407(3)(b). Under both §§ 407(a)(ii) and (b), reference is made to "the travel" not "travel" in general. These sections refer to travel that is necessitated by and on behalf of the employer or required by the employer in order to carry out the job. The travel to Miles City was necessitated by and on behalf of the employer; the side trip to Miles City to visit the brother was not. The fact that the employer allowed visits to family members along the route does not

12

transform such visits to travel contemplated by § 407(3). We conclude that § 39-71-407(3) does not require a change in the conclusion reached above in Issue I.

Our conclusion is not without consideration of the employee's needs when travel is the nature of the job. Indeed, no one can argue that certain stops along the way are not essential for eating, sleeping and taking breaks. These stops benefit the employer as well as the employee. It is only when the employee substantially deviates from the employer's business that he is not covered for injuries arising during the time which can reasonably be considered as the abandonment of the course of the employment. We conclude the Workers' Compensation Court was incorrect in its application of § 39-71-407(3), MCA.

### III.

Finally, Dale argues that the Workers' Compensation Court should have assessed costs against State Fund under § 39-71-611, MCA. However, Dale did not cross-appeal this issue and therefore, this Court will not address the issue. "[T]he respondent must file a cross-appeal when seeking review of issues not raised by appellant." Baldwin v. Orient Express Restaurant (1990), 242 Mont. 373, 377, 791 P.2d 49, 51.

Reversed.

_____
Justice

We Concur:

_____
Chief Justice

13

_John Conway Harrison_

_Tony Trenwith_

_Karla M. Gray_

Justices

I respectfully dissent.

The first issue is whether the Workers' Compensation Court erred in determining that David Dale was injured in the scope and course of employment. The appellate scope of review is whether there is substantial evidence to support the findings and conclusions of the Workers' Compensation Court. This is the same scope of review of a jury verdict. We have not adopted the broader clearly erroneous scope of review in workers' compensation cases. The clearly erroneous scope of review is in essence the standard the Court by its decision is applying here.

The critical question is whether the claimant, an over the road truck driver, in leaving the rig and the truckstop, and going into Miles City proper and returning, made a substantial deviation from his employment. The action of the claimant here was a deviation. The ultimate fact question to be answered by a trial court is whether, under the facts, it was substantial. The burden of proof of a substantial deviation is on the employer. Steffes v. 93 Leasing Co., Inc. (1978), 177 Mont. 83, 89, 580 P.2d 450, 454.

First, claimant did not leave his route, which was between Townsend, Montana and Mt. Clemens, Michigan on Interstate 94. Miles City, Montana is on the route. The stop in Miles City was both personal and business. The employer was only interested in having the load delivered by a certain date. The driver is free to relax within such time period. There was no company policy against visiting relatives. Claimant was on his route and therefore within the employer's policies. Eating, sleeping, resting and relaxation

15

would be a proper dual purpose errand for a traveling trucker. Claimant's use of alcohol was not the cause of injury. The above facts are substantial evidence for the Workers' Compensation Court to determine the deviation to Miles City with his brother was not such a substantial deviation so as to sever his employment. There is also other substantial evidence to prove the contrary.

The Court, in its majority opinion, tries to distinguish the case of Gordon v. H.C. Smith Const. Co. (1980), 188 Mont. 166, 612 P.2d 668. The differences pointed out are splitting hairs without any meaningful distinction.

The Court also has discussed the four factors to be considered as set out in Ogren v. Bitterroot Motors, Inc. (1986), 222 Mont. 515, 522, 723 P.2d 944, 948. The claimant does well as to (1) and (3), but not as well as to (2) and (4). There is substantial evidence to support the fact finder what ever way it decides and this Court should not substitute its judgment as to the ultimate fact of whether there is a substantial deviation from employment.

I also would affirm the Workers' Compensation Court in its construction of § 39-71-407(3), MCA.

Justice

Justice William E. Hunt, Sr., concurs in the foregoing dissent.

Justice

16

April 1, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Laurence Hubbard, Legal Counsel
State Compensation Mutual Ins. Fund
5 So. Last Chance Gulch
Helena, MT   59604-4759

Thomas C. Bulman
Attorney at Law
P.O. Box 8202
Missoula, MT  59802-8202

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy