CHIEF JUSTICE GRAY,
dissenting.
¶26 I respectfully dissent from the Court’s conclusion that Shawn Van Vleet was within the course and scope of his employment at the time of the fall which resulted in his death. It is my opinion that Shawn’s early morning activities constituted a deviation from work-related matters, putting him outside the course and scope of his employment at the time he fell from the balcony. I would affirm the WCC’s dismissal of Van Vleet’s petition for workers’ compensation benefits on that basis.
¶27 At the outset, I agree the WCC correctly determined that Shawn’s extreme intoxication at the time he fell does not bar Van Vleet’s petition under § 39-71-407(4), MCA. I further agree that, pursuant to the four-part test set forth in Courser v. Darby School Dist. No. 1 (1984), 214 Mont. 13, 692 P.2d 417, the WCC correctly determined that Shawn’s presence at the MNOA conference and participation in the hospitality room prior to its closing at midnight were within the course and scope of his employment.
¶28 I strenuously disagree, however, with the Court’s statements that *526 the WCC’s determination regarding the course and scope of Shawn’s employment resolved the issue before it and that the WCC’s further analysis of whether Shawn deviated from the course and scope of his employment was unnecessary. The Trust argued in the WCC that workers’ compensation benefits were not payable because Shawn had deviated from the course and scope of his employment at the time he fell and it was necessary for the WCC to address this argument. Moreover, in my opinion, the WCC correctly determined that Shawn had deviated from the course and scope of his employment at the time he fell from the balcony.
¶29 Section 39-71-407(1), MCA, provides that an insurer is liable for the payment of workers’ compensation benefits to an employee or the employee’s beneficiary if the employee “receives an injury arising out of and in the course of employment....” Generally, when an employee is traveling for the purpose of performing an assignment incidental to the employee’s regular employment and of some immediate benefit to the employer, an injury sustained by the employee during that travel may be deemed to have occurred in the course and scope of employment. See Courser, 214 Mont. at 16,692 P.2d at 418-19 (citation omitted). In Courser, we set forth four factors applicable in determining whether travel activity during which an injury occurs is work-related and, thus, within the course and scope of the employment: (1) whether the activity was undertaken at the employer’s request; (2) whether the employer directly or indirectly compelled the employee’s attendance at the activity; (3) whether the employer controlled or participated in the activity; and (4) whether both the employer and employee mutually benefitted from the activity. Courser, 214 Mont. at 16, 692 P.2d at 419.
¶30 The parties do not dispute that the WCC correctly applied the four Courser factors to its initial determination that Shawn’s attendance at the conference and participation in the hospitality room until its closure by the sponsor at midnight was within the course and scope of his employment. However, as the Court correctly observes, traveling employees are not covered 24 hours a day without limitation. The employee must remain within the course and scope of employment during travel in order for an injury to be compensable. Dale v. Trade Street, Inc. (1993), 258 Mont. 349, 352-53, 854 P.2d 828, 830.
¶31 Based on these principles, we have developed what is termed the “deviation” rule which provides that, if the employee departs from the mutually beneficial purpose of the travel-that is, temporarily leaves the employment and does not attend to employment-related matters-the employment connection is severed and an injury *527 sustained during the period of the deviation is outside the course and scope of employment. Dale, 258 Mont. at 355-56, 854 P.2d at 832. Furthermore, the question of whether an employee deviated by no longer attending to employment-related matters also is resolved by applying the four-part Courser test. Dale, 258 Mont. at 355-56, 854 P.2d at 831-32. In other words, the Courser factors are used to determine both whether overall travel is within the course and scope of employment and whether a deviation from compensable travel renders an employee outside the course and scope of the employment.
¶32 Here, the WCC applied the four Courser factors and determined that Shawn’s attendance at the conference and participation in the hospitality room prior to its closing at midnight were within the course and scope of his employment. In that regard, the WCC found that Shawn’s attendance at the conference was at least encouraged, if not required, by his employer and that his immediate supervisor attended the conference and participated in the hospitality room with him. The WCC further found that Shawn’s attendance at the conference and hospitality room were of benefit both to himself and his employer because Shawn was to attend training courses, could network with other law enforcement officers and prosecutors, and could meet with equipment vendors to evaluate available products which the Task Force was contemplating purchasing. Thus, Shawn’s participation in the MNOA-sponsored hospitality room until its closure was within the course and scope of his employment under the Courser test.
¶33 The problem with the Court’s analysis of this case is that, having observed that we apply the four-part Courser test to determine whether an employee’s activities are within the course and scope of employment and that a traveling employee is not covered 24 hours a day without limitation, the Court never returns to or applies these legal concepts. The Court merely concludes that
Shawn and his companions simply continued on with the same sponsored activity, including when they returned to the hospitality room and up until the time of Shawn’s fall. The drinking that occurred was the continuation of the same activity, in the same way, in the same place, for the same purposes and with the same sanctions of the employer that mandates the conclusion Shawn began the night in the course and scope of his employment and remained there until his fall.
Simply put, this conclusion is both factually and legally incorrect. Moreover, and at best, the Court’s conclusion leaves the “not covered 24 hours a day” principle on shaky ground indeed.
¶34 The MNOA-sponsored hospitality room closed at midnight. There *528 is no evidence that the MNOA or Shawn’s employer authorized or condoned use of the room after midnight. Consequently, the presence of Shawn and his companions in the room after obtaining a key from a hotel employee was not a “sponsored activity.” Moreover, Shawn’s early-morning activities were not a continuation of the same earlier activity and were not conducted for the same purposes. Rather, viewing the facts of this case in light of the four Courser factors reveals that Shawn’s early-morning activities were a deviation from, and not within, the course and scope of his employment.
¶35 Shawn’s employer and supervisor did not encourage him, and did not accompany him, in his early-morning activities including personal use of the hospitality room after its sponsor closed it. Nor was there any benefit to his employer in the additional socializing in which Shawn and others participated after obtaining a key to the room from a hotel employee. Shawn was not attending training courses, there no longer were equipment vendors in the hospitality room and, other than Shawn’s four drinking companions, there were no law enforcement officers or prosecutors with which to network for employment purposes. No evidence suggests-much less establishes-that Shawn and his companions were doing other than personal, nonwork-related socializing. Once the MNOA closed the sponsored hospitality room, the Courser factors no longer were met. I would conclude, therefore, that Shawn’s early-morning activities after the hospitality room closed were not work-related and constituted a deviation from the course and scope of his employment.
¶36 Furthermore, the Court’s reliance on Gordon v. H.C. Smith Const. Co. (1980), 188 Mont. 166, 612 P.2d 668, is misplaced as that case is readily distinguishable. In that case, we concluded that Gordon was on his way to where he was staying for the night at the time the accident occurred. Consequently, he was within the course and scope of his employment as a traveling employee because he was en route from work. Gordon, 188 Mont. at 173-74, 612 P.2d at 672. Thus, the question of whether Gordon’s stop at a bar to drink and socialize constituted a deviation from work-related matters was of no import because Gordon subsequently proceeded on his way home from his j ob, which activity was work-related. Gordon, 188 Mont. at 174-75, 612 P.2d at 672-73. In contrast, there is no evidence here that Shawn had discontinued his early-morning activities and was proceeding to his room for the night at the time he fell from the balcony. Indeed, Shawn’s last known activity was trying unsuccessfully to continue with more drinking. There is no record basis for the Court’s determination that the facts of this case are similar to those in Gordon.
*529 ¶37 More importantly, however, the Court hangs its hat on Gordon in the context of its continued refusal to accept the reality that the sponsored hospitality room-conceded by all to be within the course and scope of Shawn’s employment-had closed before the activities at issue here began. The Court’s statement, vis-a-vis Gordon, that “[s]imilarly, here, it is not shocking, nor is it unforeseeable that Shawn and his colleagues, while away from their homes and families, would attend and participate in a conference sponsored hospitality room where alcohol was provided in order to socialize and network,” simply and totally ignores the actual facts of this case, which include not only additional drinking, but drinking games after the hospitality room was closed.
¶38 Finally, I disagree that the WCC based its conclusion that Shawn was not within the course and scope of his employment when he fell on the fact that Shawn was highly intoxicated at the time. Rather, the WCC concluded that Shawn was not “attending to employment-related matters.” While Shawn’s presence in the hospitality room and his drinking while there prior to its closing was condoned by and beneficial to his employer, his subsequent activities were not. It is not the fact of his intoxication which removed him from the course and scope of his employment. Shawn’s early-morning activities after the sponsor closed the hospitality room, which were devoid of any benefit to his employer, constituted the deviation.
¶39 In my view, the WCC correctly determined Shawn was not within the course and scope of his employment at the time he fell from the balcony. Consequently, I would affirm the WCC’s dismissal of Van Vleet’s petition for workers’ compensation benefits and I dissent from the Court’s failure to do so.
JUSTICE NELSON and JUSTICE RICE join in the foregoing dissenting opinion.