DIANE C. STEFFES, Claimants and Respondent, *v.* 93 LEAS-
ING COMPANY, INC., Employer and United States Fidelity
& Guaranty Company, Defendants and Appellants.

No. 13937.
Submitted April 27, 1978.
Decided June 13, 1978.
580 P.2d 450.

Larry E. Riley argued, Garlington, Lohn & Robinson, Missoula, for claimant and respondent.

Boone, Karlberg & Haddon, Sam E. Haddon argued, Missoula, for defendants and appellants.

HASWELL, Chief Justice.

Defendant United States Fidelity &˙ Guaranty Company (U.S.F.&G.) appeals from an order of the Workers' Compensatin Court which determined that decedent had met his death while in the course and scope of his employment, which provided certain benefits be paid claimant, and which imposed a statutory penalty increasing the award to claimant by 10 percent.

In the early morning hours of July 31, 1976, James R. Steffes, an employee of 93 Leasing Company, Inc. of Missoula, Montana, was killed in a pickup-truck collision as he and the driver of the pickup, Steve Kottre, were returning from Seeley Lake to Missoula. Both Steffes and Kottre had been drinking heavily during the night, and

at the time of the accident, Steffes was legally intoxicated. His blood alcohol level was determined to be 0.34 gm% (gm/100ml.).

On the evening of July 30, 1976, Steffes drove a 1976 Pontiac automobile owned by 93 Leasing to Seeley Lake to exchange it with a Chevrolet Blazer owned by Mrs. Jean Strickrodt so that 93 Leasing could estimate the trade-in value of the Blazer. Steffes left Missoula after work, apparently met Kottre in Seeley Lake, and about 10:00 p.m. found Mrs. Strickrodt in a bar. While discussing the trade-in they had a few drinks. Steffes put the Pontiac car keys on the bar table for Mrs. Strickrodt, but she told him she could not exchange vehicles right then because she did not have the Blazer with her.

A while later Steffes discovered the car keys were missing. Someone had seen Dean Kottre, Steve's nephew, in the car earlier in the evening. After Steffes checked the parking lot about midnight and saw that the Pontiac was missing, he decided to wait at the bar to see if Dean Kottre would return the car. At that time he was worried not only about the missing car, but also about his money and wallet which he had left in the car's glove compartment.

When Steffes and Steve Kottre left the bar around closing time, the missing car had still not been returned. During their one to one and a half hour stay there, they drank coffee, had some breakfast, and discussed what could have happened to the Pontiac. After Steffes and Kottre left Mrs. Strickrodt's home, in Kottre's pickup, they were involved in an accident on Highway 200, near Greenough, Montana, in which Steffes was killed.

About thirty or forty-five minutes after the accident, Kottre was questioned by Howard Nickelson, an ambulance driver at the scene of the accident about what had happened. Kottre told Nickelson that Steffes and he had a motel room in Seeley Lake to stay that night, but that Steffes had wanted to return to Missoula to look for the missing car.

In August 1976, Mrs. Steffes' attorney met with U.S.F.&G., 93 Leasing insurer, to discuss compensation payments to Mrs. Steffes. On August 20, 1976 her attorney submitted briefs to U.S.F.&G. in

support of her claim for compensation. U.S.F.&G. requested additional time to make a determination about Mrs. Steffes' claim and specifically requested that no final decision be made until an inquest into Steffes' death, scheduled for October 20, 1976, was held. On October 29, 1976, U.S.F.&G. denied Mrs. Steffes' claim for compensation. The reason given by U.S.F.&G. was that they believed the accident did not arise out of and in the course of employment.

At trial, held April 12, 1977, U.S.F.&G. presented no new evidence concerning its denial of Mrs. Steffes' claim. The Workers' Compensation Court entered findings of fact and conclusions of law and an order dated July 27, 1977, in which it found that James Steffes met his death while acting in the scope and course of his employment, awarded his beneficiaries weekly benefits in the amount of $162 per week, a burial benefit, and their attorney fees and costs, and increased the full amount of the award by 10 percent pursuant to section 92-849, R.C.M.1947, after it concluded that the insurer had unreasonably refused compensation. Defendant appeals from this order.

The sole issue on appeal is the sufficiency of the evidence to support the findings of fact and conclusions of law of the Worker's Compensation Court. Specifically, defendant questions the findings and conclusions in two areas:

1. Sufficiency of the evidence to support the finding and conclusions that Steffes' death arose out of and in the course of his employment; and

2. Sufficiency of the evidence to support the finding and conclusion that compensation had been unreasonably withheld by defendant and that under section 92-849, R.C.M.1947, a 10 percent penalty should be imposed.

■ Our function in reviewing a decision of the Worker's Compensation Court is to determine whether there is substantial evidence to support the findings and conclusions of that court. We cannot substitute our judgment for that of the trial court as to the weight of the evidence on questions of fact. Where there is substan-

tial evidence to support the findings of the Workers' Compensation Court, this Court cannot overturn the decision. *Bond v. St. Regis Paper Co.*, (1977), 174 Mont. 417, 571 P.2d 372. *Robins v. Anaconda Aluminum Co.*, (1978), 175 Mont. 514, 575 P.2d 67.

Defendant's position on the first issue is that there is not substantial evidence in the record to support the Workers' Compensation Court's conclusion that Steffes' death occurred within the course and scope of his employment. They contend that either the "deviation" rule of the "dual purpose" rule, but not the "going and coming" rule, upon which the court relied, governs the outcome of this case. We believe that, irrespective of which rule is relied on, the evidence shows that Steffes' was acting in the course and scope of his employment at the time the accident occurred.

■ Generally, an injury sustained in going to or coming from work does not arise out of and in the course of employment within the meaning of the Workers' Compensation Act. *Hagerman v. Galen State Hospital*, (1977), 174 Mont. 249, 570 P.2d 893. However, in *Hagerman* this Court recognized two exceptions to the rule: (1) where employee travel pay was covered under the employment contract, and (2) where the travel was for the special benefit of the employer. This second exception to the general rule would be the applicable exception in this case.

■ This Court has previously utilized this exception to allow compensation for injuries sustained in going to or coming from work. We have said that:

"* * * A person injured on the street or highway is entitled to compensation when, as part of his employment, he is using the streets or highways in carrying on the work of his master." *Guarascio v. Industrial Accident Board*, (1962, 140 Mont. 497, 501, 374 P.2d 84, 86.

The underlying principle of this exception is that in cases where some reasonably immediate service to the employer can be discerned, the claim should be sustained; where there is no reasonably immediate service, the claim should be denied. *Guarascio, supra.*

In this case, Steffes had traveled to Seeley Lake to exchange automobiles with a petential customer in order to appraise the trade-in value of her car. He met the customer at a bar and spent the evening socializing with her and others. The general manager of 93 Leasing, Jerry Butler, testified that it was permissible for Steffes to travel to Seeley Lake and exchange cars in this manner and that it was often necessary for a salesman to socialize with customers.

During the course of Steffes' stay in Seeley Lake, someone took the car belonging to 93 Leasing. Although Steffes had personal use of this car, it was a demonstrator owned by his employer. The unrefuted testimony of the ambulance attendant was that Steven Kottre had told him that he and Steffes were returning to Missoula to look for the stolen car which belonged to his employer and which he had been using for a job related activity. Thus, we believe the evidence shows that Steffes' trip back to Missoula was for the benefit of his employer and he was acting in the course and scope of his employment at the time of his death.

We are of the opinion that the same conclusion can be reached under the "deviation" rule. This rule is best described as follows:

"It is a generally recognized principle that when an employee departs from the area where his job requires him to be, to pursue an objective in *nowise essential to or incidental to any service he is paid to perform*, the continuity of the employment is severed, and remains severed until he now *returns to the point of deviation from the path of duty*, to where in the performance of his duty he is required to be.

"In determining the applicability of the rule to the facts of a case, the character of the employee's deviation, whether pronounced or relatively inconsequential, and the materiality and purpose thereof, are given consideration. Equal consideration is also given to the reasonableness of his behavior in the light of all the circumstances; and whether the deviation caused or contributed to the injuries suffered. Time and space are also considered in determining whether the rule is applicable. The line of demarcation be-

tween a disqualifying deviation and one which does not disqualify is ordinarily a matter of judgment for the compensation authorities. *The burden of proving any deviation is on the employer.*" (Emphasis added). Blair, Reference Guide to Workmen's Compensation Law, § 9.25.

The evidence shows that Steffes was paid to lease cars. Part of his job involved temporary car trades like the one that was planned here. When Steffes' Pontiac demonstrator was stolen, he was not outside the course of his employment when he went looking for it. We are persuaded that Steffes is entitled to compensation under the "deviation" rule.

"The dual purpose" rule, the evidence would still show that Steffes was acting within the course and scope of his employment.

"The dual purpose doctrine is that an employee may, while traveling, be on an errand of his own, but if he is at the same time on some substantial mission for his employer, he may be said to be within the ambit of his employment. The rule was originally laid down by Justice Cardozo, in the case of *Marks' Dependents v. Gray* [)1929), 251 N.Y. 90, 167 N.E. 181, 182-183], in which it was said: "To establish liability, the inference must be permissible that the trip would have been made through the private errand had been cancelled. * * * The test in brief is this: if the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. * * * If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though, the business errand had been dropped, and would have been cancelled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.'

"The doctrine has been consistently followed." Blair, Reference Guide to Workmen's Compensation Law, § 9.21.

In the instant case, the evidence reveals that the only reason for Steffes' trip to Seeley Lake was to meet Jean Strickrodt and trade cars temporarily. It also shows that at the time of the accident,

Steffes was engaged in a business related purpose—to find the demonstrator he had driven to Seeley Lake. Consequently, we are convinced that, under the "dual purpose" rule, Steffes was acting in the course of his employment when he was killed.

■ Defendant further argues that the evidence shows that Steffes was intoxicated at the time of the accident, and, because of his intoxication, Steffes was incapable of performing his job. They contend that Steffes' intoxication should preclude any recovery of compensation. We disagree.

In some states, intoxication is a statutory defense to a claim for workmen's compensation. Montana's Workers' Compensation Act is silent on intoxication as a defense to a claim for benefits. Nor do we have any case authority on such a defense in industrial accident cases.

"The reported cases in which intoxication has, apart from special statute, been successfully urged as a defense have gone on the theory that, by reaching an advanced stage of intoxication, the claimant has abandoned his employment, since he has made himself incapable of engaging in the duties of that employment. * *" 1A Larson, Workmen's Compensation Law, Sec. 34.21.

An examination of the evidence, under this standard, shows that Steffes had not abandoned his employment due to his intoxication. The evidence does indicate that at the time of the accident, decedent's blood contained 0.34 gm% (gm/100ml) alcohol. However, prior to the accident, decedent had breakfast at Jean Strickrodt's and was concerned about finding his employer's car. When he left her home, he and Kottre were looking for the missing car. This evidence does not reveal such a level of intoxication that Steffes intended to abandon his employment. Additionally, the Missoula County inquest into the accident determined that Kottre, not Steffes, was driving the pickup when the accident occurred. Thus, it cannot be said that Steffes' intoxication contributed to the cause of the accident.

Under similar circumstances, another jurisdiction has held that the decedent's intoxication did not preclude recovery of compensa-

tion. *McCue v. Studebaker Automobile Sales, Inc.* (Mo.App.1965), 389 S.W.2d 408. In that case, decedent, an automobile salesman, was killed in an automobile accident while on his way to meet a prospective customer. The employer contended that at the time of the decedent's accident, the decedent was so completely under the influence of alcohol that it was impossible for him, physically and mentally, to be engaged in the scope of his employment. The evidence showed that decedent's blood contained 0.175% alcohol. The court held that there was substantial credible evidence to support the commission's finding that at the time of the accident, decedent was acting in the scope of his employment despite his intoxication. We feel that such is the case here.

Therefore, we hold that there is substantial evidence to support the Worker's Compensation Court's conclusion that the deceased was acting within the course and scope of his employment at the time of the accident.

Defendant asks us to review the sufficiency of the evidence to support the finding and conclusion that compensation had been unreasonably withheld by defendant and that, under section 92-849, R.C.M.1947, 10 percent penalty should bae imposed. Defendant argues that they did not unreasonably withhold compensation. They contend that they were asserting a legitimate defense to compensation, in good faith, and on the basis of the evidence. They argue that section 92-849 was not intended to preclude an insurer from raising a legitimate defense.

We agree with defendant that this section was not intended to eliminate the assertion of a legitimate defense by an insurer. However, under the facts of this case, we believe the penalty imposed was justified due to defendant's unreasonable delay in providing compensation.

As early as August 1976, discussion began between counsel for plaintiff and defendant about compensation payments to plaintiff. At that time, the facts surrounding the accident were not clear. Defendant specifically requested that no final decision be made until the inquest into Steffes' death. The inquest was held on October

20, 1976. As a result of the inquest, it was determined that Kottre was driving the pickup when the accident occurred. Since that fact was no longer in dispute after the inquest, we believe that defendant could not legitimately argue that Steffes' intoxication contributed to the accident. Nor are we willing to believe that, after the inquest, defendant could argue that Steffes was acting outside the scope of his employment at the time of the accident. This is because the inquest developed all of the facts surrounding the accident. We also would note that at the trial in the Workers' Compensation Court, defendant presented no new relevant evidence that would justify a denial of compensation, but they still refused to pay compensation.

We hold then that sufficient evidence is present to support the finding and conclusion that compensation had been unreasonably delayed and the 10 percent penalty as provided for in section 92-849, R.C.M. 1947, was justified.

The judgment of the Workers' Compensation Court is affirmed.

MR. JUSTICES DALY, HARRISON, SHEA and SHEEHY concur.