No. 81-66

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

JAY GREEN (FATAL), MRS. BECKY
L. GREEN,

      Claimant and Respondent,

  -vs-

C. R. ANTHONY COMPANY, Employer,

    and

TRAVELERS INSURANCE COMPANY,

      Defendant and Appellant.

---

Appeal from: Workers' Compensation Court, The Honorable
              William E. Hunt, Judge presiding.

Counsel of Record:

    For Appellant:

        Crowley, Haughey, Hanson, Toole & Dietrich, Billings,
        Montana

    For Respondent:

        John Iwen, Great Falls, Montana

---

Submitted on Briefs: June 4, 1981

Decided: OCT 7 1981

Filed: OCT 7 1981

*Thomas J. Kearney*
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court

Jay Green was employed as manager of Anthony's department store in Plentywood. Defendant appeals from the determination by the Workers' Compensation Court that Green's fatal injuries arose out of and in the course of his employment when he was killed while riding his personal motorcycle approximately three miles north of Plentywood. We affirm the holding of the Workers' Compensation Court.

Green had been employed as manager of the Plentywood store for several years prior to the accident. The Workers' Compensation Court found that on the date of the accident Green arrived at work at approximately 8:00 a.m. Green stated to one of the employees that his motorcycle was not running properly and that he suspected the engine might be "carboned up". At approximately 10:30 a.m. Green advised another store employee that he was going to the Klothes Horse, a repair shop in Plentywood. That employee testified it was normal procedure to have certain goods repaired when the need would arise. When he left, Green indicated he expected to be back by 11:00 a.m. when the usual lunch breaks for store employees were to commence. The testimony of the owner of the Klothes Horse indicated that Green arrived on his motorcycle at approximately 10:30 a.m. and left a single ladies' shoe for repairs. Green inquired how long the repairs would take. The owner advised him that it would be approximately 15 to 20 minutes. Green replied, "That's great" and left the store, giving the impression to the owner of the Klothes Horse that Green was expecting to pick the shoe up within 15 or 20 minutes.

Based on inquest testimony, the Workers' Compensation Court further determined that it was apparent that Green

left the Klothes Horse and proceeded out of Plentywood in a northerly direction on the highway. At a point approximately three miles north of Plentywood, Green lost control of his motorcycle, fell to the pavement and sustained fatal injuries. Testimony at the inquest revealed that the decedent was traveling in excess of 70 mph and not wearing a crash helmet, and that Green probably lost control of his motorcycle because the damper bar was out of adjustment.

Green's district manager testified that a store manager's duties customarily involved supervising employees, assisting with sales, handling inventory, customer relations and creation of good will. He also testified that Green's motorcycle was not a company vehicle and that the decedent was not paid mileage or reimbursement or per diem of any type. He also testified that the risk which he perceived in riding on the motorcycle was not a risk ordinarily associated with a store manager's work. On the other hand, he was also aware that Green had a motorcycle and did use it in the course of his work as manager.

In its conclusions of law, the Workers' Compensation Court included the following:

> "4. . . . However, in deviating from his employment
> to ride his motorcycle, it appears to this Court
> that the decedent may well have been removing carbon
> from the motorcycle and thereby improving its per-
> formance, an errand which can be construed from these
> facts as a benefit to both himself and the employer.
> The decedent has used his motorcycle for the Company
> in the past, not only the same day of the accident,
> but on other occasions and while not specifically
> approved by the employer it was not specifically
> prohibited.

> "5. Taking all the facts most favorable to the
> defendant the conclusion of this Court is that the
> accident in question did occur within the course
> and scope of the decedent's employment. Any other
> explanation makes less sense in view of the decedent's
> total dedication to his employment and the high
> esteem in which he was held by both the community and
> by his employers. While there was some conflict in

the time the decedent might return to his job as testified to by the various witnesses, there is no doubt that his employer and his employees considered him to be on duty at the time of his accident and that others also believed him to be on duty."

In its judgment the court then determined that the decedent Green's widow is entitled to full benefits provided by the Workers' Compensation Act.

Simply stated, the single issue this case presents is whether the fatal accident arose out of and in the course of Green's employment. Our function in reviewing a decision of the Workers' Compensation Court is to determine whether there is substantial evidence to support the findings and conclusions of that court. We cannot substitute our judgment for that of the trial court as to the weight of the evidence on questions of fact. Where there is substantial evidence to support the findings of the Workers' Compensation Court, this Court cannot overturn the decision. Steffes v. 93 Leasing Co., Inc., (1978), 177 Mont. 83, 580 P.2d 450.

This case is similar to the Steffes case in that the defendant claims there is not substantial evidence in the record to support the conclusion that the death occurred within the course and scope of employment. The Workers' Compensation Court found that Green was on an errand which can be construed from the facts as a benefit both to himself and the employer. It is apparent that the court thought the Green case comes within the "dual purpose" rule, which was described in Steffes, 580 P.2d at 454, as follows:

"'The dual purpose doctrine is that an employee may, while traveling, be on an errand of his own, but if he is at the same time on some substantial mission for his employer, he may be said to be within the ambit of his employment. The rule was originally laid down by Justice Cardozo, in the case of Marks' Dependents v. Gray [(1929), 251 N.Y. 90, 167 N.E. 181, 182-183], in which it was said: 'To establish liability, the inference must be permissible that the trip would have been made

-4-

> though the private errand had been cancelled. . .
> The test in brief is this: if the work of the
> employee creates the necessity for travel, he is in
> the course of his employment, though he is serving
> at the same time some purpose of his own. . .
> If, however, the work has had no part in creating
> the necessity for travel, if the journey would have
> gone forward though the business errand had been
> dropped, and would have been cancelled upon failure
> of the private purpose, though the business errand
> was undone, the travel is then personal, and per-
> sonal the risk.'"

> "'The doctrine has been consistently followed.'
> Blair, Reference Guide to Workmen's Compensation
> Law, §9.21."

In this case the evidence shows that as manager of the store, Green in the course of his employment left the store with the shoe for repair and took it to the repair shop. There can be no question that up to this point, he was within the course and scope of his employment. Having been told that the shoe would be repaired in 15 or 20 minutes, Green concluded that he should drive north of Plentywood, having given a clear indication that he planned to be back to pick up the shoe and to be back at the store within less than 30 minutes, that is by 11:00 a.m. We do not know the precise purpose for his traveling approximately three miles north of Plentywood. Because of Green's comment about his motorcycle engine having carboned up, it is reasonable to conclude that his purpose was to free the engine of carbon so that it would run better. The circumstances of the accident are also consistent with that objective.

In A. Larson, Workmen's Compensation Law §21.74 (1978) there is an extensive discussion of cases covering lulls in work and injuries occurring during such periods. At page 5-58, the text states:

> ". . . In the North Carolina case of Watkins v.
> City of Wilmington, the claimant fireman, while
> on his lunch break and during a 24-hour tour of
> duty, attempted to clean the oil-breather cap
> from an automobile that belonged to a fellow

employee. The practice of firemen making minor
repairs to their automobiles during lunch hour
was well known to their supervisors. The claimant
attempted to clean the cap by putting gasoline on
it and setting it on fire. After the fire
had gone out, the cap was still not clean, so
the claimant poured more gasoline on it. At
that point there was an explosion, and the
claimant suffered first and second degree burns
on his face and upper extremities. The Supreme
Court, affirming the Court of Appeals, held that
the claimant's cleaning of the oil breather was
a reasonable activity, and the injuries sustained
as a result of the explosion arose out of the
claimant's employment. This conclusion was
bolstered by the fact that this kind of practice
was well known to the plaintiff's supervisors, who
not only did not object, but specifically allowed
firemen to make such minor repairs during their
lunch hour."

There are similarities between the Watkins case and the
present Green case. The fireman was on duty in Watkins at
the time of the injury. Green had not left his employment
as manager and therefore can also be considered to be on
duty at the time of the accident. In Watkins the fireman
was working on an automobile of a fellow employee when
injured. With Green we may fairly assume he was seeking to
remove carbon from his motorcycle. The Workers' Compensation
Court found that Green's activity was for the benefit of the
employer as well as himself which adds an element not present
in the Watkins case.

With Green we note the accident happened during a short
lull in his employment. Green could have accomplished
little had he returned to his store and been required to
leave soon enough to return to the shoe store in 15 or 20
minutes. In addition, Green was the manager of the store.
As a result it would be appropriate for Green to leave the
store to engage in various types of activities which are
appropriate for store managers, and which are customarily
engaged in, to increase good will towards the store. As an
example, it would have been reasonable for Green to take 15

or 20 minutes out of the store during which he could have gone to a restaurant in Plentywood in order to have a cup of coffee with others in the community. Had he done so, and been injured through his own negligence when returning from having such cup of coffee, it would be reasonable to class the activity as in the course and scope of employment.

As further pointed out in A. Larson, Workmen's Compensation Law §21.74 at page 5-56:

> "The leeway accorded an employee during an en-
> forced hiatus in his work extends not only to
> resting and sleeping but also to a certain amount
> of wandering around and even undertaking what
> otherwis[e] might seem to be distinctly personal
> activities. In Penn Stevedoring Corporation v.
> Cardillo[1], a hauler who had discharged his
> load and had ten minutes to wait before he could
> make another trip was wandering about some floats
> moored at a dock watching bales being unloaded and
> fell into the water while crossing from one float to
> another. Compensation was awarded. The added-risk
> argument was rejected, largely on the theory that
> there was custom, acquiesced in by the employer,
> for haulers to wander about the dock during their
> idle periods. This case is a good illustration of
> the growing category of situations, discussed in
> general terms at the outset of the chapter, in
> which the 'mutual benefit' theory is inadequate
> to explain the result and in which work connec-
> tion must be found in a combination of known
> human nature and the particular circumstances
> and practices of the employment."

Larson refers to a number of similar cases where a workman has been injured during a break or hiatus in his work and where com- pensation has been extended to such fact situations. In the Green case we find that the facts show a closer relationship to employment than in several of the cited cases. We find there is substantial evidence to support the conclusion of the Workers' Compensation Court.

Claimant argues that its motion to dismiss the appeal should be granted. The motion was based upon the unusual situation that the appellant's notice of appeal was filed on

---

[1](2nd Cir. 1948) 165 F.2d 789.

February 10, and on the same day counsel for claimant filed a motion for rehearing.  The notice of appeal was properly served and filed.  It is well established that the filing of an appeal to this Court stays proceedings, thereby removing jurisdiction from a District Court or Workers' Compensation Court to proceed further in the matter.  McCormick v. McCormick (1975), 168 Mont. 136, 541 P.2d 765.  Claimant's motion to dismiss the appeal is denied.

We hold that sufficient evidence is present to support the finding and conclusion that the decedent's widow is entitled to benefits provided by the Workers' Compensation Act, and the judgment of the Workers' Compensation Court is affirmed.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

-8-