No. 81-270

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

JACKIE KEENE,

Claimant and Respondent,

vs.

THE ANACONDA COMPANY,

Employer, Defendant and Appellant.

---

Appeal from:  Workers' Compensation Court
              Honorable William Hunt, Judge presiding

Counsel of Record:

For Appellant:

Utick & Grosfield, Helena, Montana
Andrew J. Utick argued, Helena, Montana

For Respondent:

Bernard Everett argued, Anaconda, Montana

---

Submitted:  September 14, 1982

Decided:  October 13, 1982

Filed:  OCT 13 1982

*Thomas J. Kearney*
                                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Claimant-respondent petitioned the Workers' Compensation Court for permanent total disability benefits, attorney fees and a 20 percent penalty for unreasonable delay and refusal to pay benefits, in July, 1980. The Workers' Compensation Court entered judgment for the claimant on all issues. Defendant-appellant, Anaconda Company appeals the judgment of the Workers' Compensation Court.

Claimant was employed with the Anaconda Company as a boilermaker at the Berkley Pit in Butte, Montana. On August 23, 1978, claimant was riding in a two and one-half ton truck in the Berkley Pit when the truck caught fire. Claimant jumped out of the truck with a fire extinguisher in his hand and landed on his left leg. Claimant immediately felt pain in his lower back and left leg.

On August 24, 1978, claimant went to see Dr. James P. Murphy, an orthopedic surgeon in Butte, Montana, for treatment of his lower back and leg pain. Dr. Murphy recommended claimant undergo a myelogram but claimant refused to consent to a myelogram and asked for a second opinion. Dr. Murphy referred claimant to Dr. Johnson, a neurosurgeon, who examined claimant on September 13, 1978. Dr. Johnson found claimant had suffered a "low back and lower leg muscular ligamentous" injury but found no "neural component" to claimant's pain. Dr. Murphy then released claimant and claimant was treated by Dr. Phillip A. Blom, D.C., a chiropractor in Butte, Montana. Dr. Blom treated claimant from September 29, 1978, until November 3, 1978, for a "lumbar sacral strain with accompanying myofacitis and grade II radiculitis left." On November 3, 1978, Dr. Blom released claimant to return to work.

When claimant continued to complain of pain, Dr. Blom referred him to Dr. David P. Jacobson, an orthopedic surgeon in Missoula, Montana. Dr. Jacobson examined claimant on November 7,

1978, and recommended claimant return to fully active employment. Claimant returned to work as a boilermaker with the Anaconda Company on November 9, 1978. Claimant testified he had to quit after working only four hours because of pain.

On November 10, 1978, claimant saw Dr. Ladd D. Rutherford, an orthopedic surgeon, in Bozeman, Montana. Claimant saw Dr. Rutherford on two occasions after which Dr. Rutherford advised claimant that he would not do any damage to himself by returning to work but that he may have periodic back pain. Claimant returned to work with the Anaconda Company as a boilermaker on or about December 1, 1978. Claimant continued working until March 1979, when claimant quit because of pain.

On April 19, 1979, claimant went to work for Union Tank Works, Inc., in Missoula, Montana, as a boilermaker. Claimant quit work at Union Tank Works, Inc., on September 11, 1979. Shortly thereafter, claimant worked at Weiss Construction Company for a period of eight days and quit when the job was finished.

On October 7, 1979, claimant began working for Refractory Construction, Inc., as a boilermaker. Claimant quit work on October 17, 1979, because of low back pain. On October 30, 1979, claimant returned to Dr. Blom for treatment. Dr. Blom treated claimant on four occasions.

On April 22, 1980, claimant went to work for Combustion Engineering Company. Claimant was fired on April 29, 1980, because of a personality confict with his employer. On December 13, 1979, claimant was examined by Dr. Arnold G. Peterson, an orthopedic surgeon in Missoula, Montana. Dr. Peterson stated, "[h]is history, [claimant's], physical findings and x-rays [sic] are all fairly characteristic of a musculoskeletal etiology for his back pain and I strongly doubt that it has a neurogenic origin." Dr. Peterson suggested claimant should seek work that is less labor intensive.

When claimant submitted Dr. Peterson's report to the Anaconda Company's adjuster, it was requested that he be examined by Dr.

John H. Avery, an orthopedic surgeon in Great Falls, Montana. Dr. Avery stated claimant had sustained a "soft tissue injury to the lumbosacral spine as a result of his accident of August, 1978." Dr. Avery advised claimant find work in an occupation which would not involve excessive bending of his back or heavy lifting. However, the Anaconda Company still refused to pay workers' compensation benefits to claimant or claimant's medical expenses. Claimant testified due to Anaconda's refusal to pay benefits or medical expenses, claimant exhausted all of his savings which amounted to over $15,000 and lost his home and two trucks.

In July 1980, claimant petitioned the Workers' Compensation Court for permanent total disability benefits, attorney fees and a 20 percent penalty for unreasonable delay and refusal to pay benefits. The Workers' Compensation Court found claimant is permanently totally disabled, ordered the Anaconda Company pay claimant's reasonable costs and attorney fees and held claimant was entitled to a 20 percent increase in award for unreasonable delay and refusal to pay claimant permanent total disability benefits. Defendant, Anaconda Company, appeals the ruling of the lower court.

The issues raised on appeal are as follows:

1. Whether the lower court erred in finding that the claimant is permanently totally disabled because he could not return to his former occupation as a boilermaker.

2. Whether there is substantial evidence to support the lower court's finding that the claimant could not engage in his former occupation as a boilermaker since August 23, 1978.

3. Whether the lower court erred in awarding claimant the 20 percent increase for unreasonable delay and refusal to pay benefits under section 39-71-2907, MCA.

The Anaconda Company contends the lower court erred in finding claimant to be permanently totally disabled because the court did not apply the statute properly. The statute defining

permanent total disability is section 39-71-116(13), MCA, which states:

> "'Permanent total disability' means a condition resulting from injury as defined in this chapter that results in the loss of actual earnings or earning capacity that exists after the injured worker is as far restored as the permanent character of the injuries will permit and which results in the worker having no reasonable prospect of finding regular employment of any kind in the normal labor market. Disability shall be supported by a preponderance of medical evidence." (Emphasis supplied.)

The Anaconda Company argues here the lower court made no finding that claimant had no reasonable prospect of finding regular employment of any kind in the normal labor market and thus was in error. Instead, the lower court found claimant "is permanently totally disabled from engaging in his normal occupation as a boilermaker."

Although claimant may not be able to engage in his normal occupation as a boilermaker, that does not necessarily mean that claimant has a permanent total disability. The statute requires that the claimant have no reasonable prospect of finding regular employment of any kind in the normal labor market before the court can find permanent total disability. In Dunphy v. Anaconda Co. (1968), 151 Mont. 76, 438 P.2d 660, this Court held, "[t]he intention of the Legislature must first be determined from the plain meaning of the words used, and if interpretation of the statute may be so determined, the courts may not go further and apply any other means of interpretation."

Claimant cites Brurud v. Judge Moving and Storage Co. & Trans. Ins. Co. (1977), 172 Mont. 249, 563 P.2d 558, where this Court held:

> "The statute does require that he have no reasonable prospect of finding regular employment in the normal labor market; but it does not set out that he must have made a reasonable effort to secure such employment. In some cases, this Court can foresee the futility of such an effort." 172 Mont. at 253, 563 P.2d at 560.

As this Court stated in Brurud, supra, in some cases it would be

futile for a claimant to even attempt to find employment. In Brurud, supra, claimant was age fifty-eight at the time of the injury and had reached sixty-two by the time of the hearing. He had been involved in heavy labor all of his life. The medical reports stated claimant was too old for his back injury to be fused or greatly improved. However, in the present case, claimant was age thirty-two when the accident occurred and had been trained as a mechanic and welder prior to working as a boilermaker. Here, the lower court made a finding that claimant could not return to his normal occupation as a boilermaker. The lower court did not make a finding that claimant had no reasonable prospect of finding regular employment of any kind in the normal labor market. Thus, we hold the lower court did not properly apply section 39-71-116(13), MCA, and we remand to the lower court to make a finding of whether claimant has no reasonable prospect of finding regular employment of any kind in the normal labor market.

The Anaconda Company next argues there was not substantial credible evidence to support the lower court's finding that claimant could not engage in his former occupation as a boilermaker. In Steffes v. 93 Leasing Co., Inc. (1978), 177 Mont. 83, 580 P.2d 450, this Court stated: "[w]e cannot substitute our judgment for that of the trial court as to the weight of the evidence on questions of fact. Where there is substantial evidence to support the findings of the Workers' Compensation Court, this Court cannot overturn the decision." Here, the general consensus of the doctors who examined claimant was that he should find lighter work if he could not be comfortable while working as a boilermaker. This Court will not reverse the lower court's finding that claimant could not return to work as a boilermaker, but again we note, this determination alone does not support a finding of permanent total disability.

The next issue is whether the lower court erred in awarding claimant the 20 percent increase for unreasonable delay and refu-

sal to pay benefits under section 39-71-2907, MCA. This section states:

> "Increase in award for unreasonable delay or refusal to pay. When payment of compensation has been unreasonably delayed or refused by an insurer, either prior or subsequent to the issuance of an order by the workers' compensation judge granting a claimant compensation benefits, the full amount of the compensation benefits due a claimant, between the time compensation benefits were delayed or refused and the date of the order granting a claimant compensation benefits, may be increased by the workers' compensation judge by 20%."

From and after the receipt by Anaconda of Dr. Peterson's report, buttressed by the report of Dr. Avery, Anaconda should have entertained no doubt that claimant was disabled, even though it questioned the total extent of his disability. Claimant was entitled to compensation payments when the doctor's report showed a disability. Section 39-71-709, MCA. Refusal to make compensation payments to claimant by Anaconda in the circumstances here was unreasonable, and the penalty provided in section 39-71-2907, MCA, may be applied by the compensation judge to whatever amount of disability is eventually awarded to claimant.

Claimant is likewise entitled to costs and attorney fees under section 39-71-611, MCA.

Reversed and remanded for findings and judgment in accordance herewith.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

- 7 -

Mr. Justice Fred J. Weber specially concurring:

I agree with the holding of the majority opinion remanding the cause to the Workers' Compensation Court to make a finding on the absence of a reasonable prospect of finding regular employment of any kind in the normal labor market; and also agree with the majority conclusion that we will not reverse the lower court's finding that claimant could not return to work as a boilermaker.

I do not agree with the holding of the majority that the twenty percent penalty allowed in section 39-71-2907, MCA, necessarily should be applied. This conclusion appears to me to be premature. We are sending the case back for determination by the court as to the extent of the disability, and do not know whether it will turn out to be permanent or temporary, partial or full. Under those circumstances, I do not believe it is appropriate to suggest that the reports of Drs. Peterson and Avery are sufficient to warrant application of the maximum penalty at this time. That appears particularly true in the present case where we find a large number of qualified medical experts who concluded that claimant in fact did not have a disability and was free to go back to work as a boilermaker.

_____
Justice

-8-

Mr. Justice Frank B. Morrison, Jr., dissenting:

I respectfully dissent.

I agree with the majority opinion that a finding by the Workers' Compensation Court that claimant was disabled from performing work as a boilermaker is not sufficient to support a finding of permanent total disability. However, there is substantial credible evidence in the record to uphold the finding of the Workers' Compensation Court that this claimant did suffer from a total disability.

The majority correctly quotes section 39-71-116(13), MCA, which sets forth the definition of permanent total disability for workers' compensation purposes. That statute requires that claimant show he has no reasonable prospect of regular employment in the normal labor market.

Evidence was provided by claimant at the hearing in this matter, that claimant was unable to hold any kind of regular job due to the pain experienced by claimant. Claimant's testimony is corroborated by testimony from a highly reputable board certified orthopedic surgeon, Arnold Peterson, showing that claimant suffered from a thirty-five percent disability. This evidence, when combined with evidence of claimant's lack of education and inability to qualify for employment other than that of a boilermaker, provides substantial credible evidence for a finding by the Workers' Compensation Court that this claimant was permanently totally disabled.

It certainly would have been better for the Workers' Compensation Court to make a specific factual finding supporting the reason for its determination of permanent total disability. However, we can imply such a finding. In light of the fact that the Workers' Compensation Act is to be liberally construed in favor of the worker, I would imply such a finding in this

-9-

situation because there is certainly evidence in the record to uphold the determination herein made.

_____
Justice

I concur with Justice Morrison's dissent.

_____

-10-