No. 83-508

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

JOHN M. MORLEY,

       Claimant and Appellant,

  -vs-

THE ANACONDA COMPANY, Employer,

  and

THE ANACONDA COMPANY,

       Defendant and Respondent.

---

APPEAL FROM:  The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        R. Lewis Brown, Jr., Butte, Montana

    For Respondent:

        Andrew J. Utick, Helena, Montana

---

Submitted on Briefs:  July 10, 1984

Decided:  August 30, 1984

Filed: AUG 30 1984

_Ethel M. Harrison_
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

John M. Morley's claim for benefits related to an industrial injury sustained while employed by The Anaconda Company was heard before the Workers' Compensation Court on January 21, 1982. The Workers' Compensation Court judgment of October 17, 1983 denied claimant's claim and dismissed his petition. Claimant appeals. We affirm.

The following chronology of accidents, industrial and non-industrial, are operative in our discussion of claimant's appeal. Claimant testified that he sustained an upper back injury on March 20, 1979 while working within the scope of his employment for respondent. He was mixing slurry with a long-handled paddle when the handle dislodged and hit him between the shoulder blades. Claimant claims his second industrial accident and the one here involved, occurred on June 17, 1979 when a six-inch, high-pressure water hose surged with pressure and knocked him backward onto a piece of angle iron protruding from the cement floor. He injured his middle back just below the rib cage. He promptly reported this accident to his supervisor and the safety office but returned to work on his next shift. The claimant missed no work as a result of these two industrial accidents.

On August 17, 1979, due to a faulty respirator, claimant was exposed to arsenic and sulphur dioxide gases. Claimant claims that his acute sinusitis condition was aggravated by exposure to these toxic fumes.

Early in October 1979, the claimant injured his lower back while logging with his brother. According to a claim form to a private insurance carrier dated June 2, 1980, the claimant sustained another back injury on June 1, 1980 during a wrestling match. The records of claimant's physical

therapist document his third non-industrial injury on August 25, 1981 when he hit his head on the cab of a pickup.

During this course of events, the claimant was under the regular care of several doctors. Dr. Elbert had administered chiropractic treatments to the claimant since March 1979. Drs. Perez and Natividad, general practitioners, routinely treated claimant for his chronic sinus problem. Daryl Dodd was his physical therapist. In this action, claimant was examined for respondent by Dr. Davidson, an orthopedic surgeon.

The claimant was also undergoing treatment for his mental health. Dr. Timothy J. Casey, a staff counseling psychologist at Warm Springs State Hospital, evaluated claimant's mental condition to establish whether claimant's "traumatic neurosis" was casually related to any accidents. Dr. Stanley Moisey, a psychiatrist, examined the claimant in connection with claimant's application to the Veteran's Administration for benefits under the delayed post-traumatic stress syndrome disorder associated with his service in Vietnam.

In July, 1981 claimant petitioned the Workers' Compensation Court seeking workers' compensation benefits for back injuries which he alleges were caused by the June 17, 1979 industrial accident. Claimant attempted to show through depositions of medical experts that his psychological instability was also exacerbated, if not caused by, the industrial accident. Claimant appeals from the judgment of the Workers' Compensation Court denying him benefits and dismissing his petition.

He presents the following issues:

1. Whether the Workers' Compensation Court erred in dismissing claimant's petition.

2. Whether the Workers' Compensation Court erred in concluding that claimant did not sustain his burden of establishing that the accident of June 17, 1979 was the proximate cause of his resulting physical condition.

3. Whether there is substantial evidence to support the decision of the Workers' Compensation Court.

4. Whether the Workers' Compensation Court erred in finding that claimant's present physical condition is due to a non-industrial accident rather than to his industrial injury of June 17, 1979.

5. Whether the Workers' Compensation Court erred in failing to find that claimant's present physical condition is due to "traumatic neurosis" resulting from the accident of June 17, 1979.

We agree with respondent that there is one dispositive issue in this appeal: Whether there is substantial credible evidence to support the decision of the Workers' Compensation Court denying workers' compensation benefits to the claimant.

The standard of review in cases appealed from the Workers' Compensation Court is:

> "Our function in reviewing a decision of the Workers' Compensation Court is to determine whether there is substantial evidence to support the findings and conclusions of that court. We cannot substitute our judgment for that of the trial court as to the weight of the evidence on questions of fact. Where there is substantial evidence to support the findings of the Workers' Compensation Court, this Court cannot overturn the decision." Steffes v. 93 Leasing Co., Inc. (U.S.F.&G.) (1978) 177 Mont. 83, 86-7, 580 P.2d 450, 452. (emphasis added)

This case involves lengthy medical history and disputed facts. Respondent contends that the Workers' Compensation hearing examiner went to great lengths to review the entire record and adopted detailed findings of fact and conclusions

4

of law supported by extensive citations to the record for each critical fact. We agree.

The facts established by the lower court are that the claimant had his industrial injury of June 17, 1979 but that such back injuries were not serious, and healed. Thereafter the claimant left work due to his chronic sinus problem, so that his loss of income is attributable to his sinusitis and not the industrial injury. Thereafter, claimant suffered a back injury from the non-industrial accident in early October. The claimant never mentioned the serious back pain upon which he bases his petition for workers' compensation benefits until immediately after this non-industrial accident in October 1979.

Dr. Perez' deposition confirms that the claimant was in his office on July 10, July 20, July 24 and August 7, 1979, complaining of sinus and throat problems. The doctor's notes during this period make no mention of back pain. The first time the claimant indicated he was suffering from back pain to either Dr. Perez or Dr. Natividad was on October 12, 1979.

The physical therapist, Daryl Dodd, noted that on October 16, 1979 the claimant was helping lift a beam and felt his back "pop" all the way up.

Dr. Elbert stated he "had treated claimant for his March 1979 back problems and concluded that they were resolved." In December 1979 Dr. Elbert diagnosed a bilateral lumbar strain. After five treatments Dr. Elbert discharged the patient noting that the back problem "was resolved and the patient is apparently symptom free at termination of treatment." From December of 1979 until June of 1980 (date of his second non-industrial accident) the claimant received no treatment for his back.

On June 2, 1980, the claimant returned to Dr. Elbert with back complaints and received a total of 66 chiropractic treatments to his lower back continuing up to September of 1981. The claimant submitted a claim on June 2, 1980 for disability benefits to a private insurance carrier which does not cover industrial injuries, stating that he had injured his back while wrestling with his brother.

Dr. Davidson testified that he examined the claimant on January 12, 1982 and diagnosed a mild paravertebral spasm in the upper back and a "bizarre" loss of sensation in both upper arms which he attributed to the patient's "functional overlay". He concluded that the claimant could do most of his regular work except for the "functional overlay".

Pursuant to a detailed analysis of all the medical and trial testimony, the hearing examiner stated in finding No. 23:

> ". . . While claimant's brief argues that the depositions of Drs. Perez and Elbert and of Daryl Dodd 'show conclusively' that claimant has been in continual pain since August of 1979, a thorough study of these depositions shows nothing of the sort. There is a crucial gap, from June to October of that year, which none of these witnesses can fill."

The trial court concluded that the incident with the hose on June 17, 1979 was a "tangible happening of a traumatic nature from an unexpected cause" and thus satisfied the first element of the statutory definition of an injury, section 39-71-119(1), MCA. The statute further requires that the "tangible happening" results in "physical harm". Any injury related to the "tangible happening" in this case was found to produce no harm for no time was lost from work, no medical expense incurred, and no disability or impairment of any kind was found causally related to the industrial

6

accident.     There is record support for the lower court's conclusion.

The claimant contends that in addition to the back injury he sustained a psychic injury or "traumatic neurosis" as a result of his industrial accidents.  Dr. Casey, the psychologist defined the claimant's "personality disorder" as "a maladaptive manner of coping with the problems that one encounters in day-to-day life."

Both Dr. Casey, the psychologist, and Dr. Moisey, the psychiatrist, state that the claimant's emotional disturbances did not originate from any specific industrial or non-industrial accident.  Dr. Casey explained:

> "The personality, the traits of a character disorder are clear or evident by adolescence.  They are not something that come on.  The responses to the personality disorder can crop up and become more severe as time goes on but the basic personality structure - - the bricks are laid by the time adolescence comes on."

Claimant also suffers from "functional overlay".  Dr. Casey explained that the claimant expresses his personal mental disturbances physically rather than emotionally.

"Functional overlay" was simply defined by Dr. Davidson as follows:  ". . . that the patient is suffering in his mind much more than he is suffering objectively."  Dr. Davidson characterized the claimant's "functional overlay" as "marked".

The evidence was in conflict regarding cause of claimant's psychological condition.  The lower court decision denying compensability is supported by the record.

Affirmed.

_____
Justice

7

We concur:

_Frank H. Haswell_
Chief Justice

_John Conway Harrison_

_John C. Sheehy_

_Daniel J. Shea_
Justices

8