MR. JUSTICE HUNT,
dissenting:
I dissent.
The decedent, Erik Ogren, was killed in the course and scope of employment under the dual purpose and deviation rules.
The dual purpose rule is defined as follows:
“Under the dual purpose doctrine, an employee may, while traveling, be on an errand of his own, but if he is at the same time on some substantial mission for his employer, he may be said to be within the course of his employment. If the work of the employee creates the necessity for travel, the employee is in the course of his employment though he is serving at the same time some purpose of his own. If, however, the work has had no part in creating the necessity for travel, i.e., if the journey would have gone forward though the business errand had been dropped and would have been can-celled upon failure of the private purpose though the business errand was undone, the travel is personal and not in the course of employment.”
N. Grossfield, Montana Workers’ Compensation Manual, Section 4.24 at 21 (1979).
Ogren offered to fly an employee, Petritz, to Great Falls so that the employee could work a full day and still attend a family reunion. Kathryn Ogren testified that Erik discussed the trip with her on Friday afternoon. He stated that Petritz needed to go to Great Falls but was also needed at work, so he was flying Petritz to Great Falls and could possibly pick up their daughter in Sheridan. Clearly, this trip meets the definition of the dual purpose rule. The necessity to travel was created by the work of the employee. Petritz was needed in Missoula, but also needed to get to Great Falls that day. Petritz testified he believed Erik had said he was going to take the trip any *525 way. However, from the record I cannot agree that “the journey would have gone forward though the business errand had been dropped and would have been cancelled upon failure of the private purpose though the business errand was undone.” The purpose of the trip was dual: to enable Petritz to work a full day in Missoula and still attend a reunion in Great Falls; and, to pick up Ogren’s daughter in Sheridan and bring her to Missoula. Since Ogren’s trip involved a substantial benefit to his employer, the trip was within the course and scope of his employment.
Ogren should also recover under the deviation rule. That rule is defined as follows:
“Under the deviation rule, when an employee departs from the area where his job requires him to be to pursue an objective which is not essential or incidental to any service he is being paid to perform, the continuity of the employment is severed, and remains severed until he returns to the point of deviation from the path of duty. The character of the employee deviation, whether pronounced or relatively inconsequential, and the materiality and purpose thereof, are given consideration in determining the applicability of the rule. Equal consideration is also given to the reasonableness of the employee’s behavior in the light of all the circumstances, and whether the deviation caused or contributed to the injuries suffered. Time and space are considered in determining whether the rule is applicable. A line of demarcation between the disqualifying deviation and one which does not disqualify is ordinarily a matter of judgment for the trier of fact.”
N. Grossfield, Montana Workers’ Compensation Manual, Section 4.25 at 21-22 (1979).
The majority holds that Ogren’s trip from Great Falls to Sheridan was such a major deviation as to totally sever the employment connection. I disagree. Clearly the trip from Missoula to Great Falls was for a business purpose. The trip from Great Falls to Sheridan was a deviation, but not such a major deviation as to totally sever the business connection.
Ogren was traveling in a twin engine airplane capable of covering the 280 air miles from Great Falls to Sheridan in less than 90 minutes. Had he not had engine trouble in Sheridan, and been able to fly back to Missoula there would have been no need to travel without rest in order to reach Missoula in time to be at his employment as he planned to do when he left on the trip. Such a deviation did not totally sever the business connection. Once Ogren began the trip *526 back to Missoula, the deviation ended and he was once again in the course and scope of his employment.
This case is similar to a case cited by the majority, Steffes v. 93 Leasing Co., Inc. (1978), 177 Mont. 83, 580 P.2d 450. In Steffes, an employee traveled from Missoula to Seeley Lake to exchange an automobile for that belonging to a customer. In Seeley, the employee met the customer in a bar and spent several hours drinking. He then discovered the car he was driving had been stolen. The employee left Seeley with a friend and headed toward Missoula. He was involved in an automobile accident on the way and was killed. Although the employee intended to spend the night in Seeley, he wanted to return to Missoula to look for the missing car. We held that his death was compensable. The employee fell within the purview of the dual purpose rule and we held that “the evidence shows that Steffes’ trip back to Missoula was for the benefit of his employer and he was acting in the course and scope of his employment at the time of his death.”
Similarly, Ogren’s trip to Great Falls was for the benefit of his employer and in the course and scope of his employment. While the trip to Sheridan was a deviation, the deviation ended when Ogren started back toward Missoula. Kathryn Ogren testified that she suggested Ogren remain in Billings overnight given the lateness of the hours. Ogren refused, stating he had to be in Missoula by 10:00 the following morning for a business meeting. The drive to Missoula in the early morning hours of July 14, 1984, was for the benefit of the employer, and he was acting within the course and scope of his employment at the time of his death.
I would reverse the Workers’ Compensation Court.
MR. JUSTICE SHEEHY and MR. JUSTICE MORRISON concur in the foregoing dissent of MR. JUSTICE HUNT.