No. 91-030

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

BRUCE PARKER,

      Petitioner and Appellant,

-vs-

GLACIER PARK, INCORPORATED and NATIONAL UNION FIRE INSURANCE COMPANY,

      Employer/Insurer, Respondent and Cross-Appellant.

APPEAL FROM:   The Workers' Compensation Court,
               The Honorable Timothy W. Reardon, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Thomas J. Murphy; Conklin, Nybo, LeVeque & Murphy, Great Falls, Montana.

      For Respondent:

          Patrick G. Frank; Worden, Thane & Haines, Missoula, Montana.

FILED

Filed: JUL 26 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  June 6, 1991

Decided:  July 26, 1991

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Bruce Parker appeals from a judgment rendered by the Workers' Compensation Court finding him permanently partially disabled. The employer, Glacier Park, Inc., and its insurer National Union Fire Insurance Company cross-appeal from the Workers' Compensation Court's finding that Mr. Parker's injuries were sustained in the course and scope of his employment. We affirm in part and reverse in part.

The only issues we find necessary for review are:

1. Whether Mr. Parker's automobile accident occurred within the course and scope of his employment with Glacier Park;

2. Whether the evidence supports the Workers' Compensation Court's conclusion that Mr. Parker is permanently partially disabled as opposed to permanently totally disabled.

Bruce Parker was first hired by Glacier Park, Inc. as a roving relief night auditor in 1981. Eventually he became the hotel manager at the Rising Sun Motor Inn. On September 1, 1986, the day preceding his accident, Mr. Parker was preparing to close the Rising Sun for the season. As he worked he noticed Troy Miller, Executive Chef of Lake McDonald Lodge and Bob Krohne, Executive Chef at the Rising Sun. Apparently, these two individuals were discussing the transfer of food products from Rising Sun to Lake McDonald Lodge and other locations remaining open longer than Rising Sun. Usually Mr. Parker would be involved in such discussions; however on this particular evening he was too busy fulfilling other tasks.

Later that evening Mr. Parker began loading his car with lettuce and potatoes which he intended to take to St. Mary's Lodge. Apparently Rising Sun had borrowed lettuce and potatoes from St. Mary's earlier that week. It was Mr. Parker's intention to return the borrowed food that evening.

Strictly speaking, these types of food transfers were prohibited by Glacier Park, Inc. These regulations were generally not followed however. Informal food exchanges took place throughout the season when the need arose. When such exchanges occurred it was Mr. Parker's responsibility to see that all loans were repaid.

As he was loading his car to return the borrowed food, Mr. Parker once again encountered Mr. Krohne and Mr. Miller who informed him that they were going to St. Mary's that evening to have a beer. They invited Bruce Parker to join them and he decided to meet them to discuss the food transfers that had taken place earlier that day. In addition to returning the borrowed food to St. Mary's, Mr. Parker also intended to pick up some change that would be needed for the next day's business.

Mr. Parker left the Rising Sun Inn for St. Mary's where he returned the food. After returning the food, he went to the front desk and obtained the change. He met Krohne and Miller, and had a couple of beers. According to all who were present, the conversation centered around business activities and the nearly completed season. Parker described the conversation as a general business discussion as to what went well and what did not go well

during the season. Although general in nature, such discussions were important to Parker because he was responsible for making suggestions to management as to possible improvements based on the past year's performance.

At approximately 12:00 a.m. Mr. Parker left St. Mary's to return to the Rising Sun. Although he had consumed several beers and at least one shot of liquor, Parker maintains that he intended to go back to work so that he could count out the next morning's banks. He also wanted to speak to the night auditor regarding the final night's audit.

On his returning to the Rising Sun, Mr. Parker was involved in a single car accident which rendered him severely and permanently injured. He suffered a spinal cord injury resulting in complete paralysis from the waist down. In addition, Mr. Parker suffered a serious closed head injury. As a result of this injury he is plagued by severe mental deficits and he is noted to have suffered loss of memory as well as diminishment in abilities of reasoning, attention, problem solving, comprehension and stress management.

Mr. Parker's injuries have caused further problems as well. At times he suffers from severe depression and at one time he attempted suicide. He has attempted to live on his own. However at time of trial he had failed in such an endeavor on at least two occasions and was, at that time, living with his parents in Washburn, Maine.

Following trial, the Workers' Compensation Court determined

4

that Mr. Parker had suffered an injury in the course and scope of his employment as required by § 39-71-407, MCA. The court further determined that Mr. Parker was permanently partially disabled as a result of these injuries. From this determination both parties appeal.

The first issue is whether Mr. Parker's injuries "arose out of and in the course of his employment." Section 39-71-407, MCA. In order for this Court to hold that Parker was properly awarded workers' compensation benefits, it must be shown that he sustained (1) an injury that (2) arose out of and (3) in the course of his employment. Wiggins v. Industrial Accident Board (1918), 54 Mont. 335, 170 P. 9. It is obvious that the injuries sustained by Parker satisfy the definition of injury as set forth in § 39-71-119, MCA. Therefore, we need only determine whether Parker has satisfied the "arising out of" and "in the course of" requirements.

Analysis of the "arising out of" requirement presupposes the existence of causal connection between the injury and employment. Landeen v. Toole County Refining Co. (1929), 85 Mont. 41, 277 P. 615. In general, if the claimant's employment is one of the contributing causes which placed him in the path of harm and without which the injury would not have followed, the claimant is entitled to compensation. Rathburn v. Taber Tank Lines Inc. (1955), 129 Mont. 121, 183 P.2d 966.

In the case now before us, Bruce Parker had three reasons for driving to St. Mary's on the night of September 1, 1986. First,

5

he intended to return food that had been borrowed from St. Mary's. Second, he needed to obtain small bills for the operating tills of Rising Sun; and third he wanted to meet with his employees to discuss the evening's food transfers. Each of these reasons is job related. On his return from performing these tasks Bruce Parker was injured.

Glacier Park, Inc. has attempted to cast doubt on both the necessity of and the actual completion of these tasks. Its arguments in this regard have no merit. There is no evidence that Bruce Parker has testified untruthfully about his purpose in traveling to St. Mary's. Furthermore, whether these tasks were absolutely necessary to the operations of the Rising Sun is irrelevant. Bruce Parker was the operating manager and had the discretion to complete these tasks. He deemed their completion to be necessary before the next business day and they were therefore part of his job requirements. Accordingly, the "arising out of" requirement has been met.

Glacier Park, Inc. argues, however, that Parker's accident occurred when he was acting outside of the course and scope of his employment. It therefore maintains that he cannot establish the third prong of § 39-71-407, MCA, and his injury is therefore not compensable.

In asserting this position Glacier Park, Inc., maintains that Bruce Parker acted outside of the course of his employment when he stopped in the St. Mary's bar and consumed alcoholic beverages. Glacier Park, Inc., sets forth several public policy arguments,

6

which it maintains should persuade this Court to hold in its favor. We need not delve deeply into these arguments. We refuse to overrule thirteen years of precedent to hold that an employee who may be under the influence of alcohol, without having abandoned the course of his employment, is precluded from recovering under the workers' compensation system. See Steffes v. 93 Leasing Co. Inc. (1978), 177 Mont. 83, 580 P.2d 450. Here the evidence relative to the influence of alcohol is conflicting at best and we will not disturb the findings of the Workers' Compensation Court that the defendant failed to meet its burden of showing an abandonment from the course and scope of employment.

There is no evidence that Parker was acting outside the scope of his employment when he wrecked his car. On the contrary, the evidence establishes that he was traveling back to the Rising Sun to talk with his night auditor about business-related matters and to count out the next day's tills. This evidence supports the Workers' Compensation Court's conclusion that Parker's injuries arose out of and in the course of his employment.

Parker has appealed the Workers' Compensation Court's conclusion that he is permanently partially disabled. Section 39-71-705(2), MCA, states:

> The loss of both hands, both arms, both feet, both legs, both eyes, or any two thereof in one accident, in the absence of conclusive proof to the contrary, shall constitute total disability, permanent in character.

Parker maintains that as a paraplegic who has lost the use of both of his legs, he should receive the benefit of this statute.

7

Since, in his view, Glacier Park, Inc., has failed to present conclusive proof of his employability he must be awarded permanent total benefits, or in the least temporary total benefits.

The term "conclusive proof" is defined as:

. . . either a presumption of law or evidence so strong as to overbear everything to the contrary; proof that is convincing in character after all evidence and support and rebuttal has been weighed. It has been held equivalent to "a moral certainty" or "beyond a reasonable doubt." 15 A C.J.S. Conclusive

We agree that Glacier Park has failed to meet the burden set out under § 39-2-705(2), MCA. Three vocational rehabilitation experts testified regarding Mr. Parker's injuries. Apparently, all three agreed that due to his head injuries and his diminished intellectual capacity, Bruce Parker would never again be able to work in a management position. However, they did determine that he could work in other occupations that were less intellectually demanding. The evidence is far from conclusive that he was ready or able to begin work in these areas at the time of trial, however.

Beverly Abbot, Glacier Park, Inc.'s, vocational rehabilitationist, testified during her deposition that Mr. Parker would need additional treatment before he could reenter the workforce. She further stated that he would require increased upper body strength, physical stamina and possibly a lower leg bracing program before he could become employed. Additionally, as a result of his paralysis, Mr. Parker has lost control of his bladder and bowel functions. He did not have, at the time of trial, a program that would effectively control these problems.

Bruce Parker, testifying on his own behalf, stated that

8

although he wished it were different, he did not feel confident that he could live away from his parents' home. He had tried living on his own on at least two occasions and had failed. As a result of these failures Mr. Parker believed that he needed his parents to help him with his daily living activities.

The testimony recited above refutes Glacier Park, Inc.'s, argument that conclusive evidence proved Mr. Parker was not permanently totally disabled. To the contrary, it is obvious that at the time of trial, Mr. Parker was totally disabled. Perhaps after further therapy, he can reenter the workforce and once again become a full working member of society. However, at this point, it is clear that he is reliant upon his parents for his daily needs and due to problems associated with his disability he cannot engage in fulltime employment. Nor is there any evidence that he can find suitable full time employment in the vicinity of his parents' home.

We hold that the Workers' Compensation Court erred in finding Mr. Parker was permanently partially disabled. Conclusive proof, which is required under § 39-71-705(2), MCA, to support this conclusion, was not present in this case. We therefore reverse and direct the court to enter a finding holding Mr. Parker to be temporarily totally disabled. In all other respects this case is affirmed.

_____
Justice

We Concur:

_____

Karla M. Gray

Tom Trieweiler

Justices

July 26, 1991

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Thomas J. Murphy
CONKLIN, NYBO & LEVEQUE, P.C.
P.O. Box 2049
Great Falls, MT   59403

Patrick G. Frank
WORDEN, THANE & HAINES, P.C.
P.O. Box 4747
Missoula, MT   59806

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
     Deputy